**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**LYNN AMON,**

   *Plaintiff/Counter-Defendant*,

**v.**

**USAA LIFE INSURANCE COMPANY,**        Case No.  SA-23-CV-00005-JKP

   *Defendant/Counter-Plaintiff,*

**v.**

**KAREN ALTENBURG,**

   *Third-Party Defendant.*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Third-Party Defendant Karen Altenburg's Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss the First Amended Complaint for lack of diversity jurisdiction. *See* ECF No. 26. Plaintiff Lynn Amon filed a response to the motion and Altenburg filed a reply. *See* ECF Nos. 29, 31. U.S. Magistrate Judge Henry J. Bemporad, to whom this case is referred for pretrial matters, allowed the parties to conduct jurisdictional discovery to aid in the Court's consideration of the motion. After conducting jurisdictional discovery, Altenburg filed a supplement to her motion, Amon filed a response, and Altenburg filed a reply. *See* ECF Nos. 43, 47, 48. The undersigned judge then held an evidentiary hearing to assess the jurisdictional question raised by Altenburg. After due consideration of the parties' briefings, evidence, and the

applicable law, the Court **GRANTS** Altenburg's Motion to Dismiss and **DISMISSES** this case without prejudice for want of jurisdiction. *See* ECF No. 26.

## BACKGROUND

This case arises out of a dispute over a USAA life insurance policy insuring the life of Martin Amon in the amount of $500,000. Martin Amon died on June 17, 2022. At the time of his death, his mother, Lynn Amon, was the policy's designated beneficiary of record. USAA has not tendered the death benefit due to competing claims made by Lynn Amon and Karen Altenburg, Martin Amon's ex-wife. Lynn Amon, therefore, initiated this lawsuit seeking declaratory judgment resolving the question of whether she is entitled to the death benefit. Her complaint alleges the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between diverse citizens.

USAA asserted its claim for interpleader, naming Altenburg as third-party defendant, to allow the competing claimants to litigate among themselves. USAA also moved for leave to deposit the disputed funds in the amount of $500,000, plus any accrued interest, into the Court's registry. Judge Bemporad granted USAA's motion and USAA deposited the disputed funds into the Court's registry. Altenburg then filed the instant motion arguing this Court lacks jurisdiction because the parties are not completely diverse. Specifically, Altenburg argues Lynn Amon is not, as she alleges, domiciled in New York and, therefore, cannot invoke this Court's diversity jurisdiction. For the reasons discussed herein, the Court agrees.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction. This challenge may take the form of either a facial or factual

attack upon a complaint. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). In adjudicating the former, a court need only look to the sufficiency of the allegations in the complaint, presumed to be true. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). On the other hand, if a defendant advances a "factual attack" on a complaint, as Altenburg does in this case, both sides may submit evidence. Thus, a court may find a plausible set of facts to support subject-matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro*, 74 F.3d at 659; *see also Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). A reviewing court has the authority to allow affidavits or other documents and to hold a limited evidentiary hearing to resolve factual disputes regarding subject-matter jurisdiction. *See, e.g., Lawal v. Lynch*, 156 F. Supp. 3d 846, 852 (S.D. Tex. 2016).

"[T]he party seeking to invoke jurisdiction has the burden of proving the facts necessary to sustain jurisdiction." *Harvey Const. v. Robertson-Ceco Corp.*, 10 F.3d 300, 303 (5th Cir. 1994). In fact, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *cf. St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). "The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *Id*.

## ANALYSIS

Amon's Amended Complaint cites 28 U.S.C. § 1332 as the statutory basis for this Court's subject matter jurisdiction. *See* ECF No. 21 at 1, ¶ 3. A federal district court has § 1332 diversity jurisdiction over civil matters "where the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs, and is between … citizens of different states." 28 U.S.C. § 1332(a). "[D]iversity of citizenship must exist at the time the action is commenced." *Coury v. Prot*, 85 F.3d at 248. Section 1332 provides, in relevant part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>   (1) citizens of different States;
>   (2) citizens of a State and citizens or subjects of a foreign state…;
>   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties[.]

A natural person is considered a "citizen" of the state where they are domiciled, that is, where they have a fixed residence with the intent to remain there indefinitely. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555–56 (5th Cir. 1985). "'Citizenship' and 'residence' are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The question before the Court is whether Lynn Amon was a citizen of New York when this action was commenced, for the purpose of determining whether the parties are sufficiently diverse to invoke the Court's § 1332 diversity jurisdiction. The parties do not dispute that USAA, a corporation organized under the laws of Texas with its principal place of business in San Antonio, Texas, is a citizen of the State of Texas for the purposes of § 1332. In her amended complaint, Amon alleges she is a citizen of the State of New York "within the meaning and intent of 28 U.S.C. § 1332." *See* ECF No. 21 at 1. Presumably, Amon therefore asserts this Court's diversity jurisdiction under § 1332(a)(1), as a suit between "citizens of different States"—Texas and New York. But Amon can only be a "citizen" of New York if she is

domiciled in New York, that is, she must have a fixed residence in New York with the intent to remain there indefinitely. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d at 555–56. Altenburg argues that even if the Court credits Amon's statement of intent to make New York her home, Amon lacks sufficient evidence demonstrating her intent to make New York her home. Furthermore, Altenburg suggests the evidence shows Amon is being dishonest about her intent to remain in New York.

Indeed, the evidence supporting Amon's assertion that New York is her home is flimsy. When Amon first commenced this action on January 3, 2023, she alleged she was domiciled in the United Kingdom and was a foreign citizen within the meaning and intent of § 1332. *See* ECF No. 1 at 1. Her intent was presumably to assert jurisdiction under § 1332(a)(2) for actions between "citizens of a State and citizens or subjects of a foreign state." But that avenue was not available to Amon because she was a U.S. citizen living abroad at the time. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). It was not until after Altenburg's attorney notified Amon's attorney of this deficiency that Amon filed an amended complaint claiming to be a citizen of New York. *See* ECF No. 26 at 7. This alone is suspicious. Also suspicious is the lack of a factual record establishing Amon's intent to remain in New York.

Amon asserts her domicile in New York based on thirteen days she spent staying at her friend's studio apartment, seven months before filing her complaint. *See* ECF No. 43-1 at 12. Courts do not impose a durational residency requirement to establish domicile; however, they do need to find a person intends to remain indefinitely in the place where they claim to reside. *See Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003). Amon, who is retired, testified that she had been living abroad in various locations—Thailand, Spain, Portugal, and the United Kingdom—for about a decade before returning to her longtime

home of California in September 2021 to care for her son Martin, who was terminally ill. *See* Hearing Transcript, 21–23. Amon says she became concerned for her safety in California and left abruptly in May 2022 to stay with her friend in New York City. *Id*. at 11–12. There she remained for thirteen days before leaving for the United Kingdom to care for her ill sister. *Id*. at 13. Amon continued living with her sister in the United Kingdom until ten days before the Court's evidentiary hearing on this matter, at which point she returned to New York, where she participated in the hearing via Zoom from her friend's apartment. *Id*. at 15.

Amon says she intended to remain in New York all along, however, she can produce none of the documents typically associated with one's domicile. Statements of intent, either to remain in previous domicile or establish a new one, are "entitled to little weight" if they conflict with objective facts. *Coury v. Prot*, 85 F.3d at 251. Amon explains she lacks evidence of her intent to remain in New York because she is elderly and does not work, drive, go to church, own or lease any property, or pay utility bills in her name. Amon offers some evidence to indicate her intent to remain, such as a New York Public Library card and a Bank of America statement with her New York address. This evidence, however, is insufficient to establish Amon's intent to remain in New York indefinitely.

Furthermore, as Altenburg points out, at least three documents Amon produced in discovery appear to be purposely prepared to create the illusion of a New York domicile that does not exist. A day after Amon commenced this lawsuit, on January 4, 2023, she applied for a New York State non-driver ID card and applied to register to vote in the State of New York. When asked why she chose that day to apply for the documents, Amon said she could not remember why. *See* Hearing Transcript, 27–28. Amon also produced a 2022 New York State "Resident Income Tax Return" that she did not have to file because she was living on Social

Security and not reporting any income. When asked whether she previously filed tax returns in California, Amon said she did not have to because of her low income. *Id*. at 29. This suggests Amon would have known she did not have to file taxes in New York, though she says she thought New York tax filing requirements were different than California requirements. *Id*. In the hearing, Amon showed the Court a copy of her passport on which she had handwritten her New York address, two years after the passport was issued. *Id*. at 56. This evidence demonstrates Amon's intent to prove her New York domicile for the purpose of establishing the Court's jurisdiction in this lawsuit. It does not prove her intent to remain in New York indefinitely.

Moreover, the Court finds Amon's testimony in the evidentiary hearing lacked credibility. At various times Amon's testimony was elusive, contradictory, and self-serving. For instance, Amon testified she returned to California to take care of her son. *See* Hearing Transcript, 43. When asked what care he required, she said he did not need any physical or mental care. *Id*. She said she took her son on shopping trips and to medical appointments, but she does not drive. *Id*. at 65. Amon also testified that she decided to live abroad during her retirement because of the low cost of living. *Id*. However, when asked why she has now decided to move to New York City, which is expensive, she did not have a good answer. *Id*. at 66. She said her rent in New York would be less than her rent in Portugal, but she could not say how she would cover her other living expenses in New York. *Id*. Amon could not explain where her personal belongings are kept, saying only that she has been living out of two suitcases. *Id*. at 57. She further insisted that her sister's home in the United Kingdom was not a good place for her to live, though she did live there for a total of about three years. *Id*. at 64. Finally, Amon testified, in response to questions from Altenburg's attorney, that no one threatened her life when she left California in 2022. *Id*. at 14. She then changed her story when asked by her own attorney about

an incident in which she said felt she was threatened by a man accompanied by her granddaughter. *Id*. at 110–113. When asked on redirect why she failed to describe the incident earlier, she said she forgot. *Id*. at 113. For these reasons, the Court finds Amon lacks credibility and gives her testimony less weight.

By contrast, the Court finds Amon's granddaughter, Isabelle Grimnes-Amon, and third-party defendant Karen Altenburg both gave testimony that was credible. Grimnes-Amon testified that her grandmother always expressed her intent to live abroad because it was cheaper and she did not like the United States. *Id*. at 71–74. Grimnes-Amon further testified that, as the only person taking care of her father who could drive, she was the one who was taking him to doctors' appointments in his final days. *Id*. at 77. She said her grandmother left California abruptly in 2022 after a disagreement about how to handle her father's end of life care. *Id*. at 78. Altenburg testified that, in her experience, Amon is not a truthful person. *Id*. at 97. She also testified that Amon had always planned to live outside the United States in retirement and never expressed an interest in living in New York. *Id*. at 99–100. She further testified that Amon kept her belongings in storage in California. *Id*. at 101. The Court finds this testimony, which tends to show Amon was dishonest about her intent to remain in New York, to be credible, and gives it greater weight.

To summarize, the question before the Court is whether Amon can show she is a citizen of New York for the purpose of establishing this Court's § 1332 diversity jurisdiction. Amon is a citizen of New York if she is domiciled in New York, that is, she must have a fixed residence in New York with the intent to remain there indefinitely. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d at 555–56. Amon attempts to establish residency based on thirteen days she spent in New York in 2022. The brief length of time Amon spent in New York does not preclude her from establishing domicile; however, she must also demonstrate her intent to remain. *See*

*Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d at 448. Amon says she intended to remain in New York, but the Court gives her statement little weight to the extent that it conflicts with objective facts. *Coury v. Prot*, 85 F.3d at 251. Here, the objective facts suggest Amon did not have an intent to remain in New York, but was merely passing through on her way to her sister's home in the United Kingdom. Amon testified that she prefers to live abroad because it is cheaper than living in the United States. Furthermore, Grimnes-Amon and Altenburg testified Amon always planned to spend her retirement abroad. Indeed, Amon first commenced this action claiming to be a citizen of the United Kingdom, changing her story only when Altenburg's attorney notified her that she could not bring suit under § 1332(a)(2) as a U.S. citizen living abroad. Finally, Amon's documentary evidence of her intent to remain in New York appears to have been created for the sole purpose of establishing jurisdiction in this lawsuit. Based on the record before it, the Court finds Amon has failed to meet her burden of proving the facts necessary for the Court to sustain jurisdiction. *Harvey Const. v. Robertson-Ceco Corp.*, 10 F.3d at 303. Given the strong presumption against subject matter jurisdiction, and the evidence showing the Court lacks jurisdiction, the Court finds dismissal of this action is proper. *Coury v. Prot*, 85 F.3d at 248.

## CONCLUSION

For the reasons discussed, the Court finds it lacks § 1332 diversity jurisdiction and, therefore, **GRANTS** Third-Party Defendant Karen Altenburg's Motion to Dismiss the First Amended Complaint. *See* ECF No. 26. This case is **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction. The Court will enter final judgment by separate order.

U.S. Magistrate Judge Henry J. Bemporad, to whom this case is referred for pretrial matters, granted USAA's Motion for Leave to deposit the disputed funds in the amount of

$500,000, plus any accrued interest, into the Court's registry. *See* ECF No. 14. In light of the Court's finding that it lacks jurisdiction, USAA shall advise the Court, **on or before noon on November 16, 2023**, what it would like to do with the disputed funds.

It is so ORDERED.
SIGNED this 2nd day of November, 2023.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE